UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

        Case No. 14-CR-20673
        HON. GEORGE CARAM STEEH

D-1 MONROE AVANT, JR. and
D-2 TODD SELMA,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS'
<u>MOTION TO SUPPRESS EVIDENCE (DOC. #23)</u>**

On March 18, 2014, a joint task force of police agencies executed a federal narcotics search warrant at 3909 Spruce in Inkster, Michigan. There was heavy police presence including the use of a helicopter, armored vehicles and Canine officers. When the raid crew arrived at the location in two armored vehicles, defendant Monroe Avant, Jr. exited the driver's side of a white Buick parked on the driveway. Seeing the armored vehicles, Avant immediately put his hands in the air and complied with officers' commands to get down on the ground. Surveillance from a pole-cam shows defendant Todd Selma exiting the passenger side of the white Buick and entering the subject home prior to the armored vehicles arriving on the scene. Avant was placed in handcuffs and questioned on the scene by Lieutenant Kyle Dawley of the Westland Police Department ("Westland PD") for approximately thirty minutes. During this time, Selma had fled the home and was apprehended a block away.

-1-

-2-

Sergeant Paul White of the Westland PD was part of the team that entered the home. He spent approximately ten-to-fifteen minutes inside the home before coming back outside. When he came back outside, Sergeant White passed the white Buick, which he had noticed on his way into the home, and smelled an odor of burned marijuana coming from the vehicle. He walked to the driver's side window noticing that no one was in the vehicle, and that the vehicle was not running. Peering through the driver's side window, Officer White noticed a firearm in plain view. Smelling the marijuana and seeing the firearm, Officer White proceeded to search the vehicle. His search uncovered a container of marijuana, packets of heroin and an AR-15 assault rifle.

Defendants were charged in a one-count indictment with being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Now before the court is defendants' motion to suppress evidence (Doc. #23). The motion was filed by Avant, and, subsequently, Selma filed a notice of joinder and concurrence in the motion (Doc. #32). Defendants seek to suppress as evidence the firearm and drugs seized from the white Buick. The court held an evidentiary hearing spanning the course of two days. For the reasons that follow, the motion will be denied.

## I. STANDARD OF REVIEW

Admissibility of evidence is determined by the court as a matter of law. *Jackson v. Denno*, 378 U.S. 368 (1964). "Where a motion to suppress evidence has been made, the burden of establishing that the evidence was secured by an unlawful search is on the moving party." *United States v. Coleman*, 628 F.2d 961, 965 (6th Cir. 1980) (citation omitted). The government bears the ultimate burden in establishing admissibility of the evidence by a preponderance. *Lego v. Twomey*, 404 U.S. 477 (1972).

-3-

## II. DISCUSSION/ANALYSIS

Defendants argue that the evidence obtained from the search of the white Buick must be suppressed because probable cause to search the vehicle was lacking. Defendants deny that the vehicle smelled like marijuana or that the AR-15 firearm was in plain view. Therefore, defendants aver that a warrant was required prior to searching the vehicle. The court disagrees.

### A. Fourth Amendment Standard

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. "Evidence that has been obtained in violation of the Fourth Amendment may be subject to exclusion at trial." *United States v. Fisher*, 745 F.3d 200, 203 (6th Cir. 2014). "'[W]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant.'" *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (citation omitted). A search is reasonable in the absence of a warrant "only if it falls within a specific exception to the warrant requirement." *Id.* (citing *Kentucky v. King*, 563 U.S. —, —, 131 S.Ct. 1849, 1856–1857 (2011)).

### B. Justifications For The Warrantless Search

Based on the testimony at the suppression hearing, two exceptions to the warrant requirement, which will be explained below, render the search of the vehicle reasonable. But first a brief mention about the testimony at the suppression hearing. Certainly,

defendants established some inconsistencies in the testimony. However, as it relates to the testimony about the smell of marijuana emanating from the white Buick, and the AR-15 in plain view, the testimony was generally consistent among all of the officers. This testimony was credible and leads to the conclusion that the warrantless search of the vehicle did not violate the Constitution.

### 1. Detection of narcotics odor

The first exception to the warrant requirement applicable here is the detection of a drug odor coming from the vehicle. Based on the smell of marijuana emanating from the vehicle, Sergeant White was permitted to search the vehicle without a warrant. The Sixth Circuit has explained that "the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (citations omitted). Sergeant White's testimony that he smelled marijuana coming from the inside of the vehicle is supported by Captain Tom Voltattorni's testimony. Captain Voltattorni, with the Dearborn Heights Police Department, participated in the narcotics search warrant as a "trailing" officer. He drove to the scene in his vehicle, and, upon arrival, saw the white Buick and witnessed another officer who was part of the raid crew ordering Avant to the ground. Captain Voltattorni approached Avant, placed him in handcuffs and moved him away from the vehicle, closer to the curb. After handing Avant off to another officer, Captain Voltattorni went back to the vehicle to take the keys out of the ignition and close the driver's side door. He testified that he smelled burned marijuana on Avant and also coming from the inside of the white Buick. This supports Sergeant White's testimony that, ten-to-fifteen minutes after Captain Voltattorni had smelled burned marijuana, he too smelled burned marijuana coming from

the vehicle.  The smell of marijuana provided probable cause to search the white Buick without first obtaining a warrant.

Defendants make two arguments to challenge the alleged smell of burned marijuana did not justify the warrantless search.  First, they say that there was no physical evidence of burned marijuana in the vehicle.  This is an argument that could be made at trial to counter Sergeant White's and Captain Voltattorni's testimony, but it does not change the fact that they both testified to smelling burned marijuana.  Their testimony was credible.  Second, defendants argue that one of the Canine officers on the scene should have been used to detect any narcotic smell rather than relying on human police officers.  Prior to the second day of the suppression hearing, Avant's counsel provided the court with an article from the Internet[1] stating that "[d]ogs' sense of smell is 1,000 times more powerful than a human's."  The defendants argue that reliance on a human to smell drugs was impermissible when there were Canine officers on the scene.  This argument is without merit.  Defendants have not cited any case law that requires a police officer to use a Canine to detect an odor of narcotics when that officer, based on training and experience, has already smelled narcotics.  And that is exactly what happened here.  Both Sergeant White and Captain Voltattorni testified that they smelled burned marijuana, and that they knew the smell of marijuana based on their training and experience.

### 2. Plain-view doctrine

Although the smell of burned marijuana coming from the vehicle provided an adequate basis to search the white Buick without a warrant, the "plain-view" doctrine also serves as an independent basis of support for the warrantless search of the vehicle.

---

[1] The article's hyperlink is http://www.dogfencediy.com/library/drug-detection-dogs/.

"Under the plain-view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 489 (6th Cir. 2014) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Here, officers were lawfully present at 3909 Spruce to execute a narcotics warrant. Multiple officers, including Sergeant White, testified that they saw the AR-15 firearm in plain view, unobstructed. The officers were lawfully in a position from which they could view the firearm. Sergeant White saw the firearm through the driver's side window of the white Buick after exiting the home that was the subject of the raid. Captain Voltattorni saw the firearm when he went inside the vehicle to turn the ignition off after placing Avant in handcuffs. Some of the officers who were part of the raid crew making entry into the home testified to seeing the firearm from the outside of the vehicle as they were making entry into the home.

In addition to being lawfully in a position to see the firearm, the incriminating character of the firearm was immediately apparent. The firearm was seen pointing downward wedged between the front passenger's seat and the center console. "In Michigan, it is a crime to carry a pistol in a vehicle without a firearm license." *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011) (citing Mich. Comp. Laws § 776.20). Thus, the incriminating nature of the firearm was immediately apparent.

Finally, the officers (ultimately Sergeant White) had the lawful right to access the vehicle because viewing the firearm provided probable cause to believe the vehicle contained evidence of a crime (a violation of Mich. Comp. Laws § 750.227). *Galaviz*, 645 F.3d at 356. The search was, therefore, permissible under the plain-view doctrine.

-7-

Defendants cite *Arizona v. Gant*, 556 U.S. 332 (2009), for the proposition that, because Avant was detained before the search of the vehicle occurred, officers were required to obtain a warrant prior to searching the vehicle. Defendants' reliance on *Gant* is misplaced. Despite having secured Avant, there was a firearm in the vehicle on the driveway at a home in which an active narcotics warrant was being executed. The seriousness of the raid cannot be understated. As explained, there were armored vehicles, a helicopter, Canine officers and dozens of police. There was an ongoing, active effort to secure the scene. The search of the vehicle was permissible to secure the outside of the premises during the execution of the search warrant.

### III. CONCLUSION

For the reasons stated above, defendants' motion to suppress evidence (Doc. #23) is DENIED.

Dated: April 6, 2015

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 6, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk